UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
JOSHUA LINER,                                               :
:
:
Petitioner,                         :
:          08 Civ. 5886 (GEL)
-v.-                                    :
:          **OPINION AND ORDER**
:
DALE ARTUS, SUPERINTENDENT and      :
BRIAN FISHER, CORR. COMM.,          :
:
Respondents.                         :
:
------------------------------------------------------------x

Joshua Liner, Malone, NY, pro se.

Andrew M. Cuomo, Attorney General, New York
(Alyson J. Gill, Ashlyn Dannelly, Assistant Attorneys
General, of counsel), New York, NY, for respondent.

GERARD E. LYNCH, District Judge:

Joshua Liner, a New York State prisoner, seeks habeas corpus to challenge his conviction for burglary in the third degree, petit larceny, and two counts of criminal possession of a weapon in the third degree, and his resulting concurrent sentences totaling three and a half to seven years of imprisonment. The petition will be denied.

## BACKGROUND

At Liner's trial, where he represented himself with the assistance of standby counsel, Craig Rose, a security guard at a Duane Reade drugstore, testified that on April 18, 2004, he observed on a video monitor Liner enter the store, wearing a heavy coat though it was not a cold day, and proceed to take a number of packages of toothpaste and cold medicine from the shelves and put them into his pants. The video system recorded what Rose observed, and the recording

was played at trial.  Rose approached Liner as he was leaving the store without paying for the merchandise, identified himself as a security guard, and asked Liner to go with him to the back of the store.  Although Rose instructed Liner to keep his hands away from his pockets, Liner reached toward his right side while walking through the store with Rose and his partner.  Concerned that Liner might have been reaching for a weapon, Rose grasped Liner, and subdued and handcuffed him with the assistance of his partner, incurring a minor laceration on his finger in the process.  A search of Liner's person disclosed two kitchen knives, one in his right jacket pocket, the other on the left in his waistband, as well as a pair of scissors, eight packages of toothpaste, and eleven of cough syrup.  A subsequent police search yielded $190 in cash.  Rose also identified two forms, obtained from Duane Reade's files, dating from 2000 and 2002.  On each form, Liner signed a statement acknowledging that Duane Reade had revoked his privilege to enter any and all Duane Reade stores, and that he had been advised that if he entered any Duane Reade store, he could be arrested for trespass.  The trial court, over Liner's objection, admitted the forms as business records.

      The prosecution also introduced Liner's testimony before the grand jury, which he gave after consulting with an attorney and waiving immunity.  In that testimony, Liner admitted that on the day in question, he had gone "to steal some stuff out of Duane Reade."  (Tr. 297-98.)  He added that he went there "just to steal," because "[t]hat's all I do is steal."  (Id.)  With respect to the weapons, he explained that "I carry some knives in my back pocket.  You know.  I'm from New York.  Anybody from New York [knows] that you got to carry some type of weapon with you in New York."  (Tr. 297.)  He denied reaching for the knives to resist arrest, testifying that he was "trying to discard the knives, trying to get rid of it," because, having recently been

arrested for stealing from Duane Reade, he did not want to be caught with the knives. (Tr. 298.) Liner also admitted that, after his previous arrest, he had been told not to return to Duane Reade, but that he had ignored the order because "I got to eat. . . . I got to go steal so I can make some money." (Tr. 302.) He stated that he had "probably" signed a statement, but that he "didn't read those papers." (Tr. 303-04.)

The Appellate Division affirmed Liner's conviction, rejecting arguments made both in a brief submitted by counsel and in Liner's supplemental pro se submission. People v. Liner, 822 N.Y.S.2d 524 (1st Dept. 2006). The principal legal issue presented by counsel was the claim that the admission of the "trespass notices" violated Liner's rights under the Confrontation Clause of the Sixth Amendment, as interpreted in Crawford v. Washington, 541 U.S. 36 (2004). The Appellate Division rejected this argument, finding that the notices were not testimonial in nature, as they were "generated long before defendant's arrest, were not prepared by or on behalf of law enforcement, [and were not] created solely for the purpose of criminal prosecution." 822 N.Y.S.2d at 525. Leave to appeal to the Court of Appeals was granted, but that Court disposed of the matter briefly, finding that the Confrontation Clause claim was not preserved, because Liner failed to assert that Clause as a basis for his objection at trial. People v. Liner, 9 N.Y.3d 856 (2007).

Liner now seeks habeas corpus. His pro se petition can be construed liberally to raise four different arguments: (1) that the admission of the trespass forms violated the Confrontation Clause; (2) that the State violated the rule of People v. Rosario, 9 N.Y.2d 286 (1961), by failing to provide him with a copy of a surveillance video of the event; (3) that the prosecutor violated Batson v. Kentucky, 476 U.S. 79 (1986), by discriminatorily challenging black jurors; and (4)

that the evidence was insufficient to support either his weapons conviction, because a kitchen knife is not a weapon the possession of which is prohibited by New York law, or his burglary conviction.

## DISCUSSION

### I.  Confrontation Clause

A habeas court may not review a federal issue when the ultimate state court resolution of the issue rests upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Whether the state law ground bars federal review depends on

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation and internal quotation marks omitted). See also Lee v. Kemna, 534 U.S. 362, 376-76 (2002).

Here, the Court of Appeals expressly rested its decision on Liner's failure to object on Confrontation Clause grounds. 9 N.Y. 3d at 856. Reliance on the rule was not a one-day ticket: New York's contemporaneous objection rule is embodied in the Criminal Procedure Law, N.Y. C.P.L. § 470.05(2), and the New York courts have frequently applied this law precisely as the Court of Appeals did here, holding that a hearsay objection without specific invocation of the Confrontation Clause preserves only a state-law evidentiary objection and not a federal Confrontation Clause argument. See, e.g., People v. Kello, 96 N.Y.2d 740, 743-44 (2001);

People v. Dombroff, 44 A.D.3d 45, 785, 787 (2d Dep't 2007); People v. Johnson, 40 A.D.3d 1011, 1012 (2d Dep't 2007); People v. Lopez, 25 A.D.3d 385, 386 (1st Dep't 2006); People v. Hughes, 251 A.D.2d 513, 513 (2d Dep't 1998).  This is a reasonable rule, given that the hearsay rule and the Confrontation Clause – although they address similar concerns and overlap in some respects – have different contours, such that a trial judge might be expected to focus on different issues depending on which objection is being raised.

In the context of Liner's pro se trial, however, this Court has some hesitation about whether a more generous approach to whether Liner "substantially complied" with the rule is called for.  This is not a case in which a lawyer invoked the hearsay rule, but failed to cite the Confrontation Clause, thus directing the trial judge's attention to the considerations underlying the state rules of evidence and diverting her from those relevant to the federal issue.  Liner, a pro se defendant, did not invoke any particular legal rule or theory.  Instead, he phrased his objection in terms of the underlying facts.  Asked to state his objections to the admission of the documents, he said: "Whoever is – whoever wrote that . . . [t]he author of that report should be present." (Tr. 256.)  Both the hearsay rule and the Confrontation Clause rest on the importance of first-hand testimony, with its attendant oath, cross-examination and physical confrontation.  It is not clear why a demand that a witness be personally present should be construed as invoking the hearsay rule rather than the defendant's constitutional right "to be confronted with the witnesses against him." U.S. Const. Amend. VI.  On the other hand, Liner failed to be more explicit about the basis of his objection when the trial court eventually expressly disposed of the objection by admitting the documents under the business record exception to the hearsay rule.

In this case, however, Liner's objection is without substantive merit so it is unnecessary to determine the significance of his failure to cite the specific legal basis of his objection. The Confrontation Clause does not prohibit the introduction of all hearsay testimony. Rather, the Supreme Court ruled in Crawford, it is concerned with "the admission of *testimonial* statements of a witness who did not appear at trial." 541 U.S. at 53-54 (emphasis added). While the Court did not comprehensively define this category, it did note that the phrase encompasses a "core class" of statements such as ex parte testimony, affidavits, statements in response to police interrogation or similar statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52. In contrast, the Court identified business records as a paradigmatic example of "statements that by their nature were not testimonial." Id. at 56.

It may well be that not all business records fall outside of the testimonial category. A classic business record, as the Second Circuit has held, "is fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence." United States v. Feliz, 467 F.3d 227, 233-37 (2d Cir. 2006). Records that are made, kept, and relied upon in the ordinary course of business for purposes of the business enterprise are by definition not statements prepared for the purpose of substituting for live testimony by a witness in order to advance the business of prosecution. But as the New York Court of Appeals has noted, the certain "business records" maintained by law enforcement agencies are precisely testimonial, because they are inherently accusatory and are prepared in the course of a criminal investigation for purposes of memorializing the testimony of a law enforcement officer to be offered against the accused. People v. Rawlins, 10 N.Y.3d 136, 149-52 (2008).

The documents at issue in this case, however, are not of this nature. It may well be, as the Appellate Division recognized, that "trespass notices" are created in part with an eye to the possibility that they will later be used in court. 822 N.Y.S.2d at 525. But they are not created in order to memorialize witness testimony. Rather, they are created for the purpose of informing a suspected shoplifter that he is no longer welcome on the store's property, and is excluded from the store's general invitation to the public to enter its premises. They are then maintained in substantial part to enable store personnel to identify persons who have been thus excluded. Unlike, for example, incident reports memorializing the observations of store detectives or other third-party witnesses, the trespass notices in this case are in fact statements of Liner, who by his signature adopted the text reciting that he had been advised that he was no longer welcome in Duane Reade stores. Under these circumstances, the business record exception is utilized not to substitute for "the author of that report," but simply to authenticate the defendant's written admission. It is Liner, the defendant, and not any Duane Reade employee, who attests to the "truth of the matter asserted" by the document – that he was advised of the revocation of his right to enter Duane Reade stores. There are indeed hearsay aspects to the notices, for which the business record exception is on point: it is the creator of the document who implicitly asserts that the person who signed the document is the person whose picture and other identifying information appear on it. But this is a far cry from the sort of testimonial hearsay addressed by the Supreme Court in Crawford.

Finally, even if there were some error in the admission of the forms, that error would be harmless beyond a reasonable doubt. The jury had before it not merely the contested signed statements by Liner acknowledging that he had been banned from Duane Reade, but Liner's own

sworn grand jury testimony, in which he admitted that he had previously been arrested in Duane Reade and had been told not to return. (Tr. 298, 302-04.) Although Liner told the grand jury that he didn't read whatever he signed, he at no point in the trial disputed the accuracy of the documents or claimed that he was not on notice that he was not welcome in Duane Reade stores.

**II.     Rosario**

Under the doctrine of People v. Rosario, a New York prosecutor must disclose, for use during cross-examination, any prior statement of a prosecution witness, within the prosecutor's possession or control, that relates to the subject matter of the witness's testimony. Liner appears to contend that there was a "missing" or "lost" videotape, that would have corroborated his contention that he did not reach for a weapon as suggested by Rose's testimony. (Pet. Argument Point III.)

It is not clear that this argument was properly presented to the state courts. In his pro se submissions to the Appellate Division and the Court of Appeals, Liner raised the question of the "missing" video, but did not cite Rosario or claim that any such document had been withheld by the prosecutor. Rather, in his Appellate Division brief he argued that Duane Reade had failed to disclose such a tape to the prosecutor. (Dannelly Decl., Ex. B, Introduction.) The argument to the Court of Appeals was more vague, simply questioning how the alleged video went missing. (Id., Ex. F, at 1.)

But construing Liner's state submissions liberally does not help him, because his claim here is without merit. First, it is well established that the Rosario rule is a pure matter of state law, that is not subject to enforcement by habeas corpus. Green v. Artuz, 990 F. Supp. 267, 274-75 (S.D.N.Y. 1998); Cruz v. Scully, 716 F. Supp. 766, 769 n.5 (S.D.N.Y. 1989); United

8

States ex rel. Butler v. Schubin, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), aff'd, 508 F.2d 837 (2d Cir. 1975).

Second, there is no evidence in the record that any "missing video" ever existed. While there is evidence that there were two separate video cameras, as the video recording showed two separate angles (Tr. 248-51), Rose testified that only one recording was made, and that no additional videotape had been destroyed or lost. (Tr. 265-66, 276.) Liner offers no contrary evidence, relying solely on assertion and speculation.

Thus, as a matter of fact and law, Liner's Rosario claim presents no basis for habeas relief.

### III.     Batson

Liner's Batson claim is similarly lacking in merit. The Second Circuit recently addressed the showing necessary for a habeas petitioner to mount a successful Batson challenge to his conviction. Brown v. Alexander, 543 F.3d 94, (2d Cir. 2008). Quoting United States v. Alvarado, 923 F.2d 253, 255-56 (2d Cir.1991), the Court made clear that to establish a prima facie case of discrimination, a significant statistical showing must be made: "Only a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination." 543 F.3d at 101. The Court then went on to note that

> [w]e have also required that statistical arguments be based on a well-developed factual record. Such a record "would likely include evidence such as the composition of the venire, the adversary's use of peremptory challenges, the race of the potential jurors stricken, and a clear indication as to which strikes were challenged when and on what ground, and which strikes were cited to the trial court as evidence of a discriminatory intent."

543 F.3d at 101, quoting Sorto v. Herbert, 497 F.3d 163, 171-72 (2d Cir. 2007).

Liner offers no such evidence here, nor did he make such a record at trial. Rather, he simply stated, at one point during the jury selection, without clear reference to a particular juror, that "I want to object to his exclusion on the Batson, let the record reflect. So those challenges are prejudicial to the defendant." (Tr. 94.) When the court overruled his objection, he made no further record. Shortly before the jury selection was completed, Liner asked to confer with his standby counsel with respect to whether to raise a Batson issue (Tr. 149), but he did not return to the subject until after the jury was empaneled, and then only to say that "the dismissal of that black male was a violation of Batson by the D.A. Explain why." (Tr. 155.) On this record, Liner failed entirely to make a prima facie case of discrimination, and there was no constitutional error in the trial court's denial of his vague and unsupported claim of discrimination.

**IV.   Sufficiency**

Finally, Liner objects to the sufficiency of the evidence to support the jury's findings, clearly with respect to the weapons charges, and, more vaguely and summarily with respect to the burglary charge. The claims are without merit.

The Appellate Division rejected his sufficiency argument on the merits, finding that "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence." 822 N.Y.S.2d at 525. Habeas thus may be granted only if that decision was an unreasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

Under Jackson v. Virginia, 443 U.S. 307 (1979), a jury's verdict must be confirmed on habeas review if, after considering the trial evidence in the light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Id. at 319 (emphasis in original).  Under New York law, a person is guilty of criminal possession of a weapon in the third degree if he possesses any "dangerous knife . . . with intent to use the same unlawfully against another," N.Y. P.L. § 265.01(2), and has previously been convicted of any crime, id. § 265.02(1).  It is undisputed that Liner had a previous criminal conviction.  (Tr. 256-57.)  Thus, the question presented is whether any rational fact finder could conclude beyond a reasonable doubt, on the trial evidence, that Liner possessed a dangerous knife with intent to use it unlawfully.  While the evidence is hardly overwhelming, and a reasonable jury could easily have acquitted on these counts, the evidence was sufficient to meet this standard.

Liner argues that "kitchen knives" such as he possessed are not prohibited by the New York Penal Law. (Pet. ¶ 13.)  He is correct, to the extent that such knives are not among the types of weapons that are per se prohibited by § 265.01(1).  But the same offense can be committed by possessing "any . . . dangerous knife," where the knife is possessed with the intent to use it unlawfully against another.  § 265.01(2).  Under New York law, there appears to be no categorical exclusion of kitchen knives from the category of "dangerous kni[ves]."  Whether an instrument is "dangerous" for purposes of § 265.01(2) is a question for the fact-finder, to be determined by a context-specific, use-oriented inquiry:  "[T]he statute states plainly that any 'instrument, article or substance,' no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury."  People v. Carter, 53 N.Y.2d 113, 116 (1981).  Applying this standard, kitchen knives have been found by fact-finders to be dangerous knives, People v. Laramore, 764 N.Y.S.2d 299 (2d Dept. 2003), or not, People v. Juarez, 827

N.Y.S.2d 564 (N.Y. Co. Ct. 2006), depending on the facts and circumstances of the case. It is similarly a fact question for the jury whether the knives were possessed with the intent to use them unlawfully.

Here, the knives were in evidence before the jury, as was Rose's testimony that Liner reached to his right side in a manner that appeared to Rose as if Liner "could be reaching for a weapon." (Tr. 232-34.) One of the knives was found in Liner's right jacket pocket, and a reasonable jury could have inferred (though of course it was not required to) that Liner was indeed reaching for that knife to attack the security guards. While Liner denied before the grand jury, in testimony that was before the trial jury as well, that he had any such intention, and was simply looking to divest himself of the knives, it was clearly for the jury to decide whether to credit his account or that of Rose. Moreover, Liner admitted to the grand jury that he carried the knives to have "some type of weapon." (Tr. 297.) While this is not necessarily, as respondent contends, an admission of an intention to use the weapon unlawfully – as Liner could easily be construed as stating that he intended to use the weapons in self-defense – a reasonable jury could certainly consider this testimony on the question of whether the knives were "dangerous," and draw its own inferences as to its meaning with respect to Liner's intent. Thus, taking the evidence as a whole in the light most favorable to the prosecution, the evidence was sufficient to permit the jury to find beyond a reasonable doubt that at the time of the altercation with the security guards, Liner possessed dangerous knives with the intent to use them as a weapon, unlawfully, against the security guards.

Liner's challenge to his burglary conviction is more quickly disposed of. A person is guilty of burglary in the third degree when he knowingly enters a building with intent to commit

a crime therein. N.Y.P.L. § 140.20. Liner admitted before the grand jury that he entered Duane Reade with the intent to steal. (Tr. 297-98.) And the jury could find that his actions as reported by Rose – taking items from the shelves, stuffing them in his pants, and attempting to leave without paying – amply corroborated that admission.

Liner's challenges to the sufficiency of the evidence to support the jury's verdict are without merit.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

SO ORDERED.

Dated: New York, New York
       December 5, 2008

_____
GERARD E. LYNCH
United States District Judge